UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RICHARD ARTHUR NORMAN** | **CIVIL ACTION** |
| **VERSUS** | **NO:    13-6690** |
| **ODYSSEA MARINE, INC. ET AL.** | **SECTION: "A" (4)** |

## ORDER

Before the Court is plaintiff, Richard Arthur Norman's ("Norman") **Motion to Compel Production of Statements of Co-Workers (R. Doc. 25)** which seeks an Order from this Court to compel production of certain statements made by co-workers of Norman. *See* R. Doc. 25, p. 1. The motion is opposed. *See* R. Doc. 31. It was originally scheduled to be heard with oral argument on April 23, 2014, but continued and heard by oral argument on Wednesday, May 7, 2014, at the request of the parties.

**I.    Background**

Plaintiff, Richard Arthur Norman ("Norman") instituted this action against Defendant, Odyssea Marine, Inc., ("Odyssea") on December 18, 2013, alleging that on or around February 20, 2013, he sustained severe personal injuries when his foot slipped off of a ladder at the top of the wheelhouse, and he fell onto the deck, while he was assisting his crew to lower and maintain the mast of the M/V Mr. Sam. *See* R. Doc. 1, p. 2, ¶ 4.

Norman alleges that at all times relevant to this action, Odyssea owned and operated the

vessel, M/V Mr. Sam ("the vessel"). *Id.* at ¶ 5. Norman filed suit against Odyssea on the grounds that it allegedly failed to furnish a safe place to work for him, and that the unseaworthy conditions of the vessel were a proximate cause of his injuries. *Id.* at ¶ 6-7. He seeks compensatory damages in the amount of $7,000,000, maintenance and cure obligations, and an award of punitive damages. *Id.* at ¶ 7-8, *see also* R. Doc. 3.

As to the instant motion, Norman seeks to compel Odyssea to respond to its request for production of document number 3, which sought the production of any statements taken from any co-workers involved in this litigation. *See* R. Doc. 25-1, p. 1. Norman contends that in response to Interrogatory Numbers 4 and 7, Odyssea answered that statements were obtained on February 25, 2013, from crew members Hal Thomas and Medardo Thomas and provided to an adjuster, Thomas Haverson. *Id.* Norman contends that these statements are relevant because his accident occurred on February 20, 2013, only five days before the statements were obtained. *Id.* However, Norman contends that Odyssea objected to producing these statements, asserting that the work product doctrine is applicable to them. *Id.* Norman argues that Odyssea has failed to establish that these documents are protected by the work product doctrine, and therefore, seeks an Order from the Court to compel production of these statements.

## II.     Standard of Review

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are accorded a broad and liberal treatment to achieve their purpose of

adequately informing litigants in civil trials.  *Herbert v. Lando*, 441 U.S. 153, 176 (1979).  Nevertheless, discovery does have "ultimate and necessary boundaries."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).  Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court."  *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit.  *Id.*  In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues.  *Id.* at 26(b)(2)(C)(iii).

Rule 26(b)(3) provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party in its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." *Id.* However, such materials may be discoverable when either allowed by Rule 26(b)(1), or when a party shows a "substantial need" for the information and that obtaining the information by another means would pose an "undue hardship." *Id.*

Rule 34 provides that a party may request another party to produce "any designated documents or electronically stored information ... stored in any medium from which information can be obtained."  Fed. R. Civ. P. 34(a)(1)(A).  Rule 34 further "permit(s) entry upon designated land

3

or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon, within the scope of Rule 26(b)." *Id.* at 34(a)(2). This request "must describe with reasonable particularity each item or category of items to be inspected." *Id.* at (b)(1)(A). "For each item or category, the response must either state that inspection . . . will be permitted as requested or state an objection to the request, including the reasons." *Id.* at (b)(2)(B).

Accordingly, Rule 37 provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if: ... (iii) a party fails to answer an interrogatory submitted under Rule 33, or (iv) a party fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B). Rule 37 further requires that all discovery motions "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." *Id.* at 37(a)(1).

### III.  Analysis

Norman argues that Odyssea should be required to produce the statements obtained from his co-workers, Hal Thomas and Medardo Thomas, on February 25, 2013, as they are relevant to this action because they were taken five days after the accident occurred. *See* R. Doc. 25-1, pp. 1-2. Although Odyssea objected to producing these statements on the grounds of work product, Norman contends that Odyssea has failed to establish that these documents are protected by the work product doctrine, and therefore, seeks an Order from this Court to compel production of these statements.

In opposition, Odyssea contends that the work product doctrine is applicable to the witnesses statements because Norman has failed to show "any . . substantial need or [an] inability to obtain

4

to the substantial equivalent of these statements without undue hardship." *See* R. Doc. 31, p. 2-3. Furthermore, Odyssea contends that Norman sought medical treatment on February 20, 2013, the day he was injured, and sought for Odyssea to pay for this treatment. Therefore, Odyssea contends that it reasonably expected litigation to ensue, and it obtained these statements in preparation thereof. As such, it contends that these statements are protected by the work product doctrine and need not be produced to Norman. *Id.* at 3.

During oral argument counsel for Norman argued that Odyssea has failed to establish that these statements were taken in anticipation of litigation, as it was unable to prove that these statements were taken at the direction of its in house counsel, Gibbens, or its attorney of record, Charles Cerise, as outside counsel had not yet been retained when the time the statements were made. Furthermore, counsel for Norman argued that the affidavit of non-lawyer John Fontenot, Odyssea's in-house Vice President of Human Resources and Safety, references that Fontenot informed Gibbens that he believed litigation to be imminent, but it does not attest to what Gibbens instructed Fontenot to do, in terms of taking employee statements. Counsel also indicated that an affidavit for Gibbens himself should have been provided attesting to whether or not these statements were taken in anticipation or preparation of litigation.[1] As such, counsel argued that the information in Fontenot's affidavit was not specific enough to satisfy this burden.

In response, counsel for Odyssea argued that although he was not yet involved in the litigation, the in-house counsel for Odyssea was at the time the statements were taken. Counsel for

---

[1] During oral argument, counsel for Norman cites to *Piatkowski v. Abdon Callais Offshore, L.L.C.,* for the proposition that the information in the affidavit should "satisfy the defendant's burden of demonstrating that the primary motivating purpose in securing the witness statements was in furtherance of a sufficiently identifiable resolve to litigate, rather than a more or less routine investigation of a possibly resolvable claim," which here it does not. *Piatkowski,* No.99-3759, 2000 WL 1145825, at*3 (E.D. La. Aug. 11, 2000).

Odyssea also argued that the affidavit of John Fontenot is sufficient, as he is in charge of the safety program at Odyssea, and has experience with how these types of safety related claims are handled.

The work-product doctrine protects materials prepared by or for in attorney in preparation for litigation. *Hickman v. Taylor*, 329 U.S. 495 (1947). "The work product doctrine does not exist to protect a confidential relationship but to promote the adversary system by 'safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent.'" *Blockbuster Entertainment Corp. v. McComb Video, Inc.,* 145 F.R.D. 402, 404 (M.D. La.1992) (*quoting Shields v. Sturm, Ruger & Co.,* 864 F.2d 379, 382 (5th Cir.1989) (emphasis added). Moreover, the work product doctrine extends only to documents and tangible things produced "by or for" an attorney preparing for litigation; the protection does not extend to the "underlying relevant facts." *Blockbuster*, 145 F.R.D. at 403–04 (M.D.La.1992). The burden of asserting work product rests with the party who seeks to assert it. *Hodges, Grant & Kaufman v. U.S. Government*, *Dep't of the Treasury*, I.R.S., 768 F.2d 719, 721 (5th Cir.1985).

"The test for work-product protection is whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Kansas City S. Ry. Co. v. Nichols Const. Co., L.L.C.*, Nos. 05–1182, 05–220, 05–4653, 2007 WL 1792352, at *2 (E.D. La. June 20, 2007) (internal quotation marks omitted). Courts have looked to factors including whether (1) counsel had been retained, (2) the retained counsel was involved in the generation of the document, and (3) the document was created out of a "routine practice" or in connection with particular circumstances. *See Hercules Lifeboat Co., L.L.C. v. Rice,* 2012 WL 4483557, at *1 (W.D. La. Sept. 26, 2012). Other courts in this district have found that "[i]f the document would have been created regardless of

whether the litigation was also expected to ensue, the document is deemed to be created in the ordinary course of business and not in anticipation of litigation." *Piatkowski v. Abdon Callais Offshore*, *L.L.C.,* No. 99–3759, 2000 WL 1145825, at *1 (E.D.La. Aug, 11, 2000) (emphasis added); *Southern Scrap Material Co. v. Fleming*, 2003 WL 2147516, at *6 (E.D. La. June 18, 2003). "The mere fact that litigation is pending does not transform everything done by or for a party into work product worthy of protection." *Piatkowski*, 2000 WL 1145825, at *2.

  After considering the arguments of the parties, the Court finds that these documents are not protected by the work product doctrine as counsel for Odyssea contended, because "documents created by [an insurer, its representative, or a claims adjuster] tend not to be protected by the work product doctrine if they were prepared as a 'more or less routine investigation of a possibly resistible claim.'" *Kansas City S. Ry. Co. v. Nichols Const. Co., L.L.C.*, No. 05-1182, 2007 WL 2461014 (E.D. La. Aug. 27, 2007); citing *Tejada Fashions Corp. v. Yasuda Fire and Marine Ins. Co. (U.K.), Ltd.*, 1984 WL 500, at * 3 (S.D.N.Y.1984). Here, counsel for Odyssea indicated that Fontenot was the person who hired the independent adjuster, and not Gibbens, the in-house counsel. Therefore, Fontenot, who routinely handled safety related matters of Odyssea, was not likely preparing for litigation specifically to Norman's injuries, but rather, operating in the ordinary course of business by obtaining an independent adjuster to assess the severity of the claims. As such, as this Court has previously held, a "statement taken from a witness by insurance claims adjuster [is] routine and not protected by the work product doctrine." *Kansas City,* 2007 WL 2461014 at *5; citing *Holton v. S & W Marine, Inc*., 2000 WL 1693667, at *3 (E.D.La.2000).

  Furthermore, the Court finds that the affidavit of Fontenot alone is not specific enough to establish that the "primary motivating purpose" in taking the statements were in preparation or anticipation of litigation. primary motivating purpose behind the creation of the document is pivotal in determining whether the work product protection applies. *See e.g., Kansas City S. Ry. Co. v.*

7

*Nichols Const. Co., L.L.C.*, No. 05-1182, 2007 WL 2127820 at *4 (E.D. La. July 25, 2007); *Piatrowksi*, 2000 WL 1145825, at *2 (E.D.La.2000). Therefore, the Court finds that these statements are not protected by the work product doctrine and should be produced no later than **seven (7) days** from the issuance of this Order.

After considering the arguments of counsel, the Court also finds that Odyssea had legitimate reasons for objecting on the basis of privilege, and therefore Norman's attorney fee request is denied.

**IV.    Conclusion**

**IT IS ORDERED** that plaintiff, Richard Arthur Norman's ("Norman") **Motion to Compel Production of Statements of Co-Workers (R. Doc. 25)** is **GRANTED IN PART AND DENIED IN PART.**

**IT IS GRANTED** as to Norman's requests to obtain the witness statements taken by the independent adjuster. Odyssea is to produce the witness statements no later than seven (7) days from the issuance of this Order.

**IT IS DENIED** as to Norman's request for attorney fees.

New Orleans, Louisiana, this 20th day of May 2014.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**